JOSEPH JOHN TURRI (SBN 181994)
INSURANCE LITIGATORS & COUNSELORS
445 North State Street
Ukiah, California 95482
Telephone: 707-462-6117
Facsimile: 707-468-5302

Attorneys for Plaintiff
KAREN PAOLI-KEPLINGER

*E-filing*

UNITED STATES DISTRICT COURT

NOTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*EDL*

KAREN PAOLI-KEPLINGER,

No. **CV 08 0945**

Plaintiff,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY
and DOES 1 to 20, inclusive,

Defendants.

COMPLAINT FOR BREACH OF CONTRACT,
BREACH OF THE COVENANT OF GOOD
FAITH AND FAIR DEALING, AND
PUNITIVE DAMAGES

**JURY TRIAL DEMANDED**

Plaintiff alleges that:

**FACTS COMMON TO ALL CAUSES OF ACTION**

1. Plaintiff is a resident of the County of Mendocino, State of California, and entered into a contract for the insurance coverage at issue in this case in Ukiah, California, the performance of the contract was to be in the place of plaintiff's residence.

2. A true and correct copy of the contract of insurance coverage at issue in this case is attached hereto as Exhibit 1 and shall hereinafter be referred to as the "Policy".

COMPLAINT FOR BREACH OF CONTRACT

-1-

1  3. The Policy was issued by defendant, LINCOLN NATIONAL LIFE INSURANCE

2 COMPANY, hereinafter called "LINCOLN".

3  4. Defendant LINCOLN is authorized to transact the business of insurance in the State of

4 California and does so under a Certificate of Authority issued by the California Department of

5 Insurance.

6

7  5. Defendant LINCOLN was acting under this Certificate of Authority when it issued the

Policy to plaintiff for long-term disability income coverage.

8

9  6. On or about May 1989, plaintiff became covered under the Policy issued by the

10 defendant.

11  7. On or about October 1, 1999, plaintiff became totally disabled as defined by the

12 Policy, and remains so as of the date of filing this complaint.

13  8. Plaintiff has performed all conditions precedent that were required of plaintiff to

14 perform except those that were excused and/or waived.

15  9. The Policy contains a 90 day elimination period before benefits are due and payable.

16  10. Defendant began paying plaintiff's benefits as due under the Policy on or about

17 January 5, 2000.

18

19  11. Defendant knows that this disability benefit is a major source of income for plaintiff

and that she and her family rely on it for support, as well as that any interruption in receipt of the

20

proper benefits or improper calculation resulting in deficient sums paid would cause plaintiff to

21

22 suffer an extreme and oppressive financial hardship and severe emotional distress.

23  12. The policy contained a rider (cost of living benefit rider "COL") which required

24 LINCOLN to annually recalculate the benefits owed plaintiff and increase the amount owed to

25 plaintiff from defendant.

COMPLAINT FOR BREACH OF CONTRACT

-2-

13. From the date of plaintiff's initial disability, defendant miscalculated benefits owed plaintiff, requiring plaintiff in 2006 to request defendant to adequately investigate and adjust her claim so as to receive the correct amount of benefits due her. To date, even though plaintiff, through her attorney at her expense, performed defendants' investigative duties, they have not paid or properly calculated the correct amounts owed to plaintiff.

14. Defendant's miscalculations included ignoring sums owed plaintiff as a result of improper calculation of the cost of living benefit contrary to the Policy's language.

15. Defendant's miscalculations also were a result of applying an improper cost of living benefit figure, even though plaintiff has requested correction and provided evidence of this miscalculation, defendant refused and has still refuses to correct the benefits owed to plaintiff.

16. In or about June 2006, defendant paid plaintiff $5,411.68 incorrectly, representing to plaintiff were the cost of living benefits due her under the Policy.

17. Defendant's miscalculations were done improperly and without any investigation or inquiry a proper benefit calculation would have revealed plaintiff was owed in excess of $50,000.00.

18. In or about March 2007, after plaintiff's attorney (at plaintiff's expense) performed the investigation, duties that defendant should have provided. As a result, plaintiff received an additional cost of living benefits in the amount of $54,382.00.

19. Only through the effort of her counsel (at her expense) did defendant pay plaintiff interest on the above sums in or about November 2007.

20. As of the date of this complaint, defendant has not properly paid plaintiff's benefits.

21. As a result of defendants' conduct, plaintiff has been required to retain legal counsel to recover the benefits unreasonably and unjustly withheld by defendants. As a result of defendant's conduct, plaintiff has suffered severe emotional distress.

COMPLAINT FOR BREACH OF CONTRACT

-3-

22.  As a result of defendants' conduct, plaintiff has suffered damages in an amount exceeding $25,000.00 and to be proved at trial.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (As to Defendants LINCOLN and DOES 1-5)

23.  Plaintiff re-alleges and incorporates herein by reference each and every allegation of Paragraphs 1-22, inclusive, of this complaint.

24.  Plaintiff has demanded of defendant payment of the correct amount of benefits due under the Policy, but defendant has failed and refused, and continues to fail and refuse to make fair, reasonable, correct, and prompt payment under the Policy.  Thus, defendant is in breach of said Policy.

25.  As a direct and proximate result of the breach of contract by said defendants, plaintiff has been injured in a sum representing the benefits due her plus interest thereon from the date said payment should have been made under the terms of the Policy.

30.  As a further, direct and proximate result of the breach of contract by defendants, plaintiff has suffered and will continue to suffer consequential damages in an amount to be shown according to proof at trial and as prayed for below.

### SECOND CAUSE OF ACTION
### Breach of Duty of Good Faith and Fair Dealing
### (As to LINCOLN and DOES 6-10)

31.  Plaintiff re-alleges and incorporates herein by reference each and every allegation of paragraphs 1 through 30, inclusive, of this complaint.

32.  Defendants have breached their duty of good faith and fair dealing owed to plaintiff in the following respects:

COMPLAINT FOR BREACH OF CONTRACT

1    (a) Unreasonably withholding benefits under the Policy which were and are

2    payable to plaintiff;

3    (b) By not timely paying the claim due under the Policy even though plaintiff has

4    fully cooperated with defendants;

5    (c) By failing to reasonably and promptly investigate and pay plaintiff's claim for

6    benefits in that if defendants had adequately and timely investigated plaintiff's claims, benefits

7    would have been paid timely, without the need for plaintiff to hire counsel.

8    

9    (d) By failing to promptly provide a reasonable and truthful explanation of the

10    basis relied upon in the Policy, in relation to the applicable facts, for the calculations of

11    plaintiff's benefits owed; specifically, they cited Policy language and misstated the applicability

12    of said language to plaintiff's claim.

13    33. Plaintiff is informed and believes and thereon alleges that defendant(s), and each of

14    them, have breached their duty of good faith and fair dealing owed to plaintiff by other acts or

15    omission of which plaintiff is presently unaware and which will be shown according to proof at

16    the time of trial.

17    34. As a proximate result of the aforementioned unreasonable and bad faith conduct on

18    the part of LINCOLN, plaintiff has suffered and will continue to suffer in the future, damages

19    

20    under the Policy, plus interest, and other economic and consequential damages, for a total

21    amount to be shown at the time of trial.

22    35. As a further proximate result of the aforementioned wrongful conduct on the part of

23    defendants, plaintiff has suffered anxiety, worry, mental and extreme emotional distress, which

24    add to plaintiff's general and special damages in a sum to be determined at the time of trial.

25

36. As a further proximate result of the unreasonableness and bad faith conduct on the part of defendants, plaintiff was compelled to retain legal counsel to obtain the benefits due under the Policy. Therefore, defendants are liable to plaintiff for those attorney's fees reasonably necessary and incurred by plaintiff in order to obtain those benefits in a sum to be determined at trial.

37. Defendants' conduct described herein was intended by the defendants to cause injury to plaintiff or was despicable conduct carried on by the defendants with a willful and conscious disregard of the rights of plaintiff, subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention to deprive plaintiff of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants as well as the other relief prayed for below.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

### FIRST CAUSE OF ACTION
### Breach of Contract

1. For the amount of the benefits due pursuant to the contract of insurance, in an amount according to proof at trial;

2. For interest on the benefit payments due but not paid, from the dates said payments should have been paid up to the dates said benefits are actually paid;

3. General and special damages according to proof;

COMPLAINT FOR BREACH OF CONTRACT

-6-

1    4. Attorney's fees and costs of the suit incurred herein; and

2    5. For such other and further relief the Court may find just and proper.

3    ## SECOND CAUSE OF ACTION
     ## Breach of Covenant of Good Faith and Fair Dealing
4

5    1. For the amount of the benefits due pursuant to the contract of insurance, in an amount

6    according to proof at trial;

7    2. For interest on the benefit payments due but not paid, from the dates said payments

8    should have been paid up to the date said benefits are actually paid;

9    3. General and special damages according to proof;

10   4. Attorney's fees and costs of suit incurred herein;

11   5. Punitive damages; and

12   6. For such other and further relief as the Court may find just and proper.

13
     Dated: February 13, 2008
14

15                                          JOSEPH JOHN TURRI
16                                          Attorney for Plaintiff
                                            Karen Paoli-Keplinger
17

18

19

20

21

22

23

24

25

COMPLAINT FOR BREACH OF CONTRACT

-7-

EXHIBIT  1

KAREN L PAOLI
15 6062811



**LINCOLN
NATIONAL
LIFE INSURANCE
COMPANY**

# DISABILITY
# INCOME
# INSURANCE
# POLICY

Non-Cancellable to Age 65

Not Subject to Modification or Cancellation While in Force

We agree to pay You the benefits provided in this Policy for loss due to an Injury or Sickness which begins while this Policy is in force.

We have issued this Policy to You in consideration of the premium and the statements made in Your application. A copy of the application is attached and is a part of this Policy.

You may continue this Policy to Age 65 by payment of the premium on each renewal date. As long as the premium is paid on time, We cannot change Your Policy or its premium rate until the end of the month of Your 65th birthday.

**RENEWABLE OPTION AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES** . You can renew this policy as long as You are actively and regularly employed on a full time basis; there is no age limit. You must pay premiums on time at Our premium rates then in effect at time of renewals. (For further details, see page titled "Renewal Option.")

## 10-DAY RIGHT TO EXAMINE POLICY

Within 10 days after this Policy is received, it may be cancelled for any reason by delivering or mailing it to the agent through whom it was purchased or to our Home Office. Upon cancellation, We will return any premium paid and this Policy shall be void from the beginning.

Read This Policy Carefully. This is a legal contract between You and The Lincoln National Life Insurance Company

## Table of Contents

Definitions ........................................................................................................................................................ 4

Total Disability ................................................................................................................................................ 4

Residual Disability ......................................................................................................................................... 4

Benefits ............................................................................................................................................................ 5

Presumptive Total Disability ......................................................................................................................... 6

Waiver of Premium ......................................................................................................................................... 6

Rehabilitation .................................................................................................................................................. 6

Exclusion .......................................................................................................................................................... 6

Pre-Existing Condition Limitation ................................................................................................................. 6

Recurrent and Concurrent Disability ............................................................................................................ 6

Renewal Option ............................................................................................................................................... 7

Claims ............................................................................................................................................................... 7

Other Benefits ................................................................................................................................................. 7

Premiums ......................................................................................................................................................... 8

General Provisions .......................................................................................................................................... 8

MARSH CA 3A5A

INSURED'S NAME:  KAREN L PAOLI                        POLICY NUMBER: 15 6062811

AGE: 33                                              DATE OF ISSUE: MAY 21, 1989
                                                     NONSMOKER    CLASS 3A
                                                     BILLING:     DIRECT BILL

PROFESSIONAL ADDED INCOME PROTECTION POLICY INFORMATION

    ELIMINATION PERIOD                          90 DAYS

    TOTAL DISABILITY MONTHLY BENEFIT            $850

    MAXIMUM BENEFIT PERIOD FOR:

        TOTAL DISABILITY                        TO AGE 65 OR FOR 24 MONTHS
                                                     IF LONGER

        PRESUMPTIVE TOTAL DISABILITY            LIFETIME

    ANNUAL BASE PREMIUM $408.20   UNTIL AGE 65

BENEFITS PROVIDED BY RIDER

|  | MONTHLY BENEFIT | RIDER ANNUAL PREMIUM |
|---|---|---|
| SOCIAL INSURANCE BENEFIT<br>ELIMINATION PERIOD:   180 DAYS | $   850 | $   163.12 |
| COST OF LIVING BENEFIT RIDER<br>INITIAL PERCENTAGE      5%<br>ULTIMATE PERCENTAGE     5% | ------- | INCLUDED<br>ABOVE |

PREMIUMS ON PAGE 3 INCLUDE A 12% NONSMOKER DISCOUNT

PAGE 3 (CONTINUED)

# PART 1
# DEFINITIONS

WHENEVER ANY TERM SHOWN ON PAGE 3 APPEARS IN THE TEXT OF THIS POLICY IT SHALL REFER TO THE TIME, DATE OR AMOUNT SHOWN FOR SUCH TERM.

"**You**" and "**Your**" refers to the Insured named on Page 3.

"**We**," "**Our**," and "**Us**" means the Lincoln National Life Insurance Company. We are located at 1300 South Clinton Street, Fort Wayne, IN 46801.

"**Date of Issue**" is the date the Policy becomes effective. It is shown on Page 3.

"**Age 63**", "**Age 65**" and "**Age 75**" refers to Your 63rd, 65th and 75th birthday, respectively.

"**Elimination Period**" is the number of days, beginning with the day Your Total or Residual Disability starts, for which no disability benefits are provided. It is shown on Page 3.

"**Maximum Benefit Period**" is the longest period of time We will pay benefits. It is shown on Page 3.

If Your Total or Residual Disability starts after Age 63, and before Age 65, benefits will be paid until:

a. the date Your Total or Residual Disability ends; or
b. the date on which 24 months of benefits have been paid; whichever is first.

"**Sickness**" means a sickness or disease that first appears (makes itself known) while this Policy is in force. It includes disability from transplant surgery, where You are a donor, or cosmetic surgery if such surgery takes place more than 6 months after the Date of Issue of this Policy. It includes Total and/or Residual Disability due to complications of pregnancy or childbirth. It includes Total and/or Residual Disability due to normal pregnancy or childbirth after You have been disabled for 90 days.

"**Injury**" means an accidental bodily injury that happens while this Policy is in force.

"**Occupation**" means the occupation (or occupations, if more than one) in which You are engaged at the start of Your disability.

"**Physician**" means a licensed practitioner practicing within the scope of their license. A Physician must be someone other than You or a family member.

"**Physician's Care**" means treatment by a physician which is appropriate for the condition causing the disability. When in the opinion of the Physician future

and continued treatment would be of no benefit to You, then the requirement of being under a Physician's Care will be considered to be met.

"**Monthly Income**" means:

a. the monthly salary, wages, fees, commissions and bonuses that You have earned; plus
b. any contributions to a pension or profit sharing plan made on Your behalf; less
c. usual and customary business expenses deductible for Federal income tax purposes.

It does not include income from:

a. rent, royalties, annuities, investments; or
b. deferred compensation plans, disability income plans, retirement plans; or
c. any other income not derived directly from Your vocational activity.

Monthly Income will be accounted for on a cash basis. Income accrued but not yet received before the Elimination Period began will be excluded from the Monthly Income during disability.

"**Prior Monthly Income**" is the greater of:

a. Your average Monthly Income during the 12 months just prior to the start of Your Total or Residual Disability; or
b. Your highest average Monthly Income for any 2 successive calendar years during the five year period just prior to the start of Your Total or Residual Disability.

On the first anniversary of Your continuous Total or Residual Disability, and on each subsequent anniversary of such disability, We will increase Prior Monthly Income by 5% of (a) or (b), whichever is larger.

"**Current Monthly Income**" is Your Monthly Income during a month for which Residual Disability is being claimed.

"**Total Disability**" means that because of Injury or Sickness:

a. You cannot do the main duties of Your Occupation; and
b. You are under a Physician's Care; and
c. You are not engaged in any other gainful occupation.

"**Residual Disability**" means that during the Elimination Period because of Injury or Sickness:

a. You are not able to do one or more of the main duties of Your Occupation, or You can perform all

NCD9N                                                                   4

, of Your normal duties but not for as much time as is normally required to perform them; and

b. You are under a Physician's Care; and

c. Your Current Monthly Income is 80% or less of Your Prior Monthly Income.

Following the Elimination Period, Residual Disability means that due to the continuation of that Injury or Sickness:

a. Your Current Monthly Income is 80% or less of Your Prior Monthly Income; and

b. You are under a Physician's Care.

"**Pre-Existing Condition**" means a sickness or physical condition for which prior to the Date of Issue:

a. symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care or treatment; or

b. medical advice or treatment was recommended or received from a Physician.

# PART 2
# BENEFITS

## TOTAL DISABILITY BENEFIT.

You must be disabled for the entire Elimination Period either due to Total or Residual Disability. The Total Disability Monthly Benefit shown on Page 3 will be paid thereafter while Your Total Disability continues.

Benefits are not payable for days of disability which occur before the end of the Elimination Period. Benefits will not be paid beyond the Maximum Benefit Period shown on Page 3. For periods of Total Disability of less than one month, We will pay 1/30th of the monthly benefit for each day of disability.

## RESIDUAL DISABILITY BENEFIT.

You must be disabled for the entire Elimination Period either due to Total or Residual Disability. The amount to be paid while Your Residual Disability continues is determined monthly and equals:

$$\frac{A-B}{A} \times \text{Total Disability Monthly Benefit from Page 3}$$

'**A**' is Prior Monthly Income

'**B**' is Current Monthly Income

Residual Disability Benefits are not payable:

a. for days of disability which occur before the end of the Elimination Period; and

b. for any days for which Total Disability benefits are paid; and

c. beyond Age 65, unless Residual Disability starts after Age 63 as defined under Maximum Benefit Period.

For periods of Residual Disability of less than one month, We will pay 1/30th of the monthly benefit for each day of disability.

The first six monthly payments for a Residual Disability will never be less than 50% of the Total Disability Monthly Benefit. In the event Your Current Monthly Income is 25% or less of Your Prior Monthly Income, We will consider "B" to be zero.

The Residual Disability for which claim is made must be the cause of the decrease in Your Monthly Earnings. We can require any proof that We consider necessary to verify Your Current Monthly Income and Prior Monthly Income. We have the right to have an independent accountant retained by Us examine Your financial records as often as We may reasonably require.

## SURVIVOR BENEFIT.

If You die while receiving benefits under this policy and if You were Totally Disabled for at least 24 months prior to Your date of death, We will pay a benefit to Your beneficiary, or Your estate if a beneficiary has not been named. We will pay the Total Disability Monthly Benefit for up to three months, but not beyond the remainder of the Maximum Benefit Period.

We must receive written notice of Your death.

## RETURN TO WORK BENEFIT

Loss of Earnings means:

1. Your Monthly Income from any occupation is reduced to 80% or less of Your Prior Monthly Income; and

2. Such reduction of income is due to Injury or Sickness.

Benefits will be payable when:

1. You engage full time in any occupation immediately following a period of Total or Residual Disability for which benefits were paid; and

2. You incur a Loss of Earnings as a result of such Total or Residual Disability.

The monthly amount of this benefit equals:

$$\frac{A-B}{A} \times \text{Total Disability Monthly Benefit from Page 3}$$

"A" is Your Prior Monthly Income and
"B" is Your Current Monthly Income.

Benefits will continue to be payable while You continue to incur a Loss of Earnings. Benefits will not be payable:

1. For more than 4 months for any Total or Residual Disability; or

2. Beyond the end of the Maximum Benefit Period; or

3. Beyond Age 65; whichever occurs first.

If this benefit is payable for a period for which any other benefit is payable under Your Policy:

1. We will pay only one benefit for that period; and

2. The benefit We pay will be the larger of the benefits payable.

The provision of Your Policy titled Waiver of Premium will apply to any period for which this benefit is payable.

### PRESUMPTIVE TOTAL DISABILITY.

If Injury or Sickness causes You to totally and irrecoverably lose:

a. Your speech; or

b. Your hearing in both ears; or

c. Your sight in both eyes; or

d. use of both hands; or

e. use of both feet; or

f. use of one hand and one foot;

We will consider You to be Totally Disabled even if You are able to engage in an occupation. Further care and treatment by a Physician is not required.

This Benefit will be paid in accordance with the Total Disability provisions of this Policy. Benefits will begin, however, on the date of loss, if earlier than the date the Total Disability benefit would usually begin. We will pay this benefit for the Maximum Benefit Period specified for Presumptive Total Disability on Page 3. This benefit will be paid in lieu of all other benefits under Your Policy.

### WAIVER OF PREMIUM.

After You have been Totally or Residually Disabled for a period of 90 days, We will:

a. refund any premiums that became due and were paid during this period; and

b. waive the payment of any premium that becomes due thereafter while Your Total or Residual Disability continues.

The premium to be waived shall be the premium according to the mode of premium payment in effect when Your disability starts.

Once Your Total or Residual Disability ends, Your Policy can be kept in force by paying any premiums that become due.

### REHABILITATION.

If You are receiving Total Disability benefits, such benefits may be continued while You participate in a rehabilitation program which We approve. Such program must be designed to assist Your return to work and be:

a. a recognized program operated by the federal or state government; or

b. a formal rehabilitation program at an accredited college or business school or at a licensed vocational school; or

c. a professionally planned program.

We will reimburse You for the cost of tuition, books, equipment, and other reasonable expenses to the extent they are not otherwise covered under some other plan or program. This reimbursement will be limited to no more than six times the Total Disability Monthly Benefit shown on Page 3.

## PART 3

### EXCLUSION

This Policy does not cover any loss caused by:

a. an act of war, whether declared or undeclared; or

b. normal pregnancy or childbirth except as described in the Definition of Sickness.

### PRE-EXISTING CONDITION LIMITATION

If disability starts within 2 years from the Date of Issue, and is due to a Pre-Existing Condition, benefits will not be paid unless the condition:

a. was disclosed and not misrepresented on Your application; and

b. is not excluded by name or specific description.

## PART 4
## RECURRENT AND CONCURRENT DISABILITY

### RECURRENT DISABILITY.

We will treat a Total or Residual Disability as a recurrence of a prior disability if:

a. it is due to the same or related conditions; and

b. it occurs within 12 months after the end of the prior Total or Residual Disability.

NCD9N                                                        6

Such periods of recurrent disability may be used to determine completion of the elimination period.

### CONCURRENT DISABILITY.

If Your Total or Residual Disability is caused by more than one Injury or Sickness, or from both, benefits will be paid as if it was caused by only one Injury or Sickness.

## PART 5
## RENEWAL OPTION

This Policy may be renewed after Age 65 for the Total Disability Monthly Benefit shown on Page 3 provided:

a. You remain actively and regularly employed on a full time basis; and

b. Premiums are paid on time.

We have the right to require proof from time to time that You are actively and regularly employed on a full time basis.

This policy must be in force when You elect this option.

If this Policy is renewed after Age 65:

a. only continuous days of Total Disability can be used to satisfy the Elimination Period; and

b. the Residual Disability benefit will not be payable; and

c. the Maximum Benefit Period from Age 65 to Age 75 will be 24 months; and

d. after Your Age 75, the Maximum Benefit Period will be 12 months.

All other provisions, limitations and exclusions in the Policy will continue to apply.

Premiums will be based on the table of rates in effect for people also insured under this type of Policy who are the same age and in the same class as You at renewal. Any premium paid after Age 65 for a period not covered by Your Policy under this option will be returned to You.

## PART 6
## CLAIMS

### NOTICE OF CLAIM.

Written notice of claim must be given to Us within 20 days after a covered loss starts, or as soon as reasonably possible. The notice can be sent to Our Home Office in Fort Wayne, Indiana or given to Our agent. There is no required form, but the notice should include Your name and the Policy Number.

### CLAIM FORMS.

After We receive the written notice of claim, We will send You forms for filing Proof of Loss. If You do not receive these within 15 days, You will meet the Proof of Loss requirements by giving Us a written statement of the nature and extent of the loss within the time limit stated in Proof of Loss.

### PROOF OF LOSS.

If this Policy provides periodic payments for a continuing loss, written Proof of Loss must be given to Us within 90 days after the end of each period for which We are liable. For any other loss, written proof must be given within 90 days after such loss. If it was not reasonably possible to give written proof in the time required, We will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless You were legally incapacitated.

### TIME OF PAYMENT OF CLAIMS.

After receiving written Proof of Loss:

a. We will pay all benefits then due which are not payable periodically; and

b. We will pay at the end of each 30 days any benefits due that are payable periodically subject to continuing Proof of Loss.

### PAYMENT OF CLAIMS.

All benefits will be paid to You. If, however, any benefit is payable to Your estate or if You are not competent to give valid release, We can pay benefits up to $1,000 to one of Your relatives whom We consider to be entitled to the benefits. We will be legally discharged to the extent of any such payment made in good faith.

## PART 7
## OTHER BENEFITS

### REINSTATEMENT.

If the renewal premium is not paid before the Grace Period ends, this Policy will lapse. Later acceptance of the premium by Us or by Our Agent authorized to accept payment without requiring an application for reinstatement will reinstate this Policy.

If We or Our agent require an application, You will be given a conditional receipt for the premium. If the application is approved, this Policy will be reinstated as of the approval date. Lacking such approval, this Policy will be reinstated on the 45th day after the date of the conditional receipt unless We have previously written You of our disapproval.

The reinstated Policy will cover only loss that results from an Injury that occurs after the date of reinstatement or Sickness that begins more than 10 days after such date. In all other respects Your rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated Policy.

Any premium We accept for reinstatement will be applied to a period for which premiums have not been paid. No premiums will be applied to any period more than 60 days before the reinstatement date.

### SUSPENDED COVERAGE WHILE IN MILITARY.

This Policy will be suspended if and when You enter active military service. This suspension applies to the military service of any country or international authority, but does not apply to active duty for training that lasts less than 60 days. Any premium paid beyond the date of suspension will be refunded. Upon Your release from full time active duty prior to Age 65, You may put this Policy back in force without evidence of insurability. We will need written notice and payment of the required premium within 90 days of Your release from full time active duty. The premium will be at the same rate as if this Policy had not been suspended. The premium will be payable upon Your receiving written notice from Us giving the amount of premium and the period such premium will provide coverage under this Policy. The restored Policy will cover only loss that results from an Injury after the restoration date, or Sickness that begins more than 10 days after such date.

# PART 8
# PREMIUMS

### PREMIUM PAYMENTS.

This Policy takes effect with payment of the first premium at 12:01 A.M. at Your place of residence on the Date of Issue and continues in force until 12:00 Midnight on the next renewal premium due date. Each renewal premium is due at the end of the period of insurance for which the preceding premium was paid. Premiums are payable at Our Home Office or to a duly authorized Cashier. The mode of premium payment may be changed as provided by Our rules except it may not be changed during a period of Total or Residual Disability. The mode of premium payment of any premium shall not continue this Policy in force beyond the date when the next premium is due.

### GRACE PERIOD.

This Policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the following 31 days. During the grace period, this Policy will stay in force.

### REFUND OF PREMIUM AFTER DEATH.

We will refund the portion of any premium paid which applies to a period beyond the date of Your death.

# PART 9
# GENERAL PROVISIONS

### ENTIRE CONTRACT: CHANGES.

This Policy, with the application and attached papers, is the entire contract between You and Us. No change in this Policy will be effective until approved by one of Our officers. This approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

### INCONTESTABLE.

No claim for loss incurred or disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition existed before the Date of Issue of coverage unless it is excluded by name or specific description.

After this Policy has been in force for 2 years from the Date of Issue, excluding any period during which You were disabled, We cannot contest the statements in the application.

### PHYSICAL EXAMINATION.

We, at Our expense, have the right to have You examined as often as reasonably necessary while a claim is pending.

### LEGAL ACTION.

No legal action may be brought to recover on this Policy within 60 days after written Proof of Loss has been given as required by this Policy. No such action may be brought after 3 years from the time Proof of Loss is required to be given.

### MISSTATEMENT OF AGE.

If Your age has been misstated, the benefits under this Policy will be those the premium paid would have purchased at Your correct age. If We accepted any premium which falls due on a date when, on the basis of Your correct age, this Policy would not have been issued or coverage would have ceased, Our liability will be limited to a refund of such premiums.

### CONFORMITY WITH STATE STATUTES.

Any provision of this Policy which, on its Date of Issue, is in conflict with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**ASSIGNMENT.**

No assignment of this Policy shall be binding on Us until it is filed with Us at Our Home Office. We will assume no responsibility for the validity or sufficiency of any assignment.

**NONPARTICIPATION.**

This Policy is issued on a nonparticipating basis and will not share in our surplus earnings.

Signed for the Lincoln National Life Insurance Company at its Home Office in Fort Wayne, Indiana as of the Date of Issue as stated on Page 3 of this Policy.

C. Suzanne Womack

**C. Suzanne Womack, Secretary**

Ian M. Rolland

**Ian M. Rolland, President**

Examined by

Countersigned by

# SOCIAL INSURANCE BENEFIT RIDER

## DEFINITIONS

"**Social Insurance Benefit**" means payments:

a. under the Federal Social Security Act, as amended, or any similar Federal, state or local government act or law; and

b. under any Worker's Compensation, or occupational disease, employer's liability or similar law.

"**Rider Benefit**", when used in this rider, means the monthly benefit for the Social Insurance Benefit Rider. This benefit is shown on Page 3 of Your Policy.

"**Policy Benefit**", as used in this rider, means the Total Disability Monthly Benefit shown on Page 3 of Your Policy.

All definitions in Your Policy apply to this rider.

## BENEFITS

The Rider Benefit will be added to the Policy Benefit for determining Total or Residual Disability benefits under Your Policy. It will be added on the first day of Your continuous Total or Residual Disability after the end of the Elimination Period for this rider. This Elimination Period is shown on Page 3 of Your Policy.

The Rider Benefit will not be added to the Policy Benefit for days of disability:

a. prior to the end of the Elimination Period for this rider; or

b. for which You receive or are entitled to receive Social Insurance Benefits for Your disability; or

c. after You start receiving retirement benefits under Social Security or similar government acts; or

d. after You reach Age 65.

If, during a disability, Your Social Insurance Benefits cease, We will begin, or resume, adding the Rider Benefit to Your Policy Benefit to determine Your Total or Residual Disability benefits. We will start this on the first day after the date through which Social Insurance Benefits were paid.

## PROOF OF SOCIAL INSURANCE BENEFITS

The Rider Benefit will be added to the Policy Benefit only if You make proper and timely application for any and all Social Insurance Benefits for which You may be eligible. Satisfactory proof of Your application for such benefits must be given to Us.

You must submit written evidence, satisfactory to Us, when and as often as We may reasonably require showing that:

a. Your claim for Social Insurance Benefits has been approved, denied, or is still pending; and

b. if denied, that You are following the appeals process available to You.

If, after the appeals process, You are still denied Social Insurance benefits, We may require that You reapply for them from time to time.

In the event You receive a lump sum benefit from one of the Social Insurance providers, We will ignore the portion of the settlement that represents a retroactive benefit. The remaining portion of the settlement, if any, will be divided by the Rider Benefit to determine the period, in months, during which the Rider Benefit will not be added to the Policy Benefit.

## GENERAL PROVISIONS

This rider is made a part of the Policy to which it is attached.

The Date of Issue of this rider is the same as the Date of Issue of Your Policy unless otherwise shown on Page 3 of the Policy.

The premium for this rider is shown on Page 3 of Your Policy. It is payable on the dates, in the manner, and under the conditions specified in Your Policy.

This rider terminates:

a. when You reach Age 65; or

b. when Your Policy terminates, if sooner.

When coverage is scheduled to terminate on a given date, it will terminate at 12:00 midnight on that date.

Unless changed by this rider, all provisions, exclusions and limitations of Your Policy remain the same and apply to this rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*C. Suzanne Womack*
C. Suzanne Womack, Secretary

Countersigned by:_____

Case 3:08-cv-00945-MMC    Document 1    Filed 02/14/2008    Page 19 of 26

# COST OF LIVING BENEFIT RIDER

## DEFINITIONS

All of the definitions in Your Policy apply to this rider.

## BENEFITS

We will pay You an additional benefit during Your continuous Total or Residual Disability if:

a. such disability lasts more than 365 days; and

b. the Total or Residual Disability Benefit is payable under the Policy to which this rider is attached.

This benefit will begin on the 366th day of Your disability and will be paid monthly. This benefit will start at an amount equal to the Total Disability Monthly Benefit (see Page 3) multiplied by the Cost of Living Benefit Initial Percentage shown on Page 3. On each subsequent anniversary of Your continuous disability, We will increase this benefit. It will be increased by an amount equal to the initial Total Disability Monthly Benefit multiplied by one of the Cost of Living Benefit Percentages. The Initial Percentage will continue to be used through the 10th anniversary of Your disability. The Ultimate Percentage will be used starting with the 11th anniversary of Your Disability. This additional benefit will be added to Your Total Disability Monthly Benefit while the Total or Residual Disability Benefit under Your Policy continues to be paid.

In addition, for a Residual Disability, We will adjust Your Prior Monthly Income by the Cost of Living Benefit Percentages instead of by the percent shown. These adjustments will be made on each anniversary of Your continuous Total or Residual Disability. The Initial Percentage will be used on the 1st through the 10th anniversaries of such disability. The Ultimate Percentage will be used on the 11th and later anniversaries.

Your Policy may have a Supplemental 60 Benefit Rider and/or a Social Insurance Benefit Rider added to it (see Page 3). If so, We will add the benefits payable under such riders to Your Total Disability Monthly Benefit before calculating Your additional benefit as described above. Any increase in Your additional benefit which is attributable to one or both of these riders is payable only in months when Total or Residual Disability Benefits are payable under such riders.

We will do the calculations described above on each anniversary of Your continuous Total or Residual Disability until:

a. Your Total or Residual Disability ends; or

b. You reach Age 65; or

c. the Maximum Benefit Period ends; whichever occurs first.

## RIGHT TO INCREASE MONTHLY BENEFIT

Once You return to active and full time work after the end of a continuous Total or Residual Disability during which a benefit was paid under this rider, You may increase the Total Disability Monthly Benefit shown on Page 3 of Your Policy. You may increase it by the amount of the additional monthly benefit used to determine Your last claim payment, excluding any portion attributable to either the Supplemental 60 Benefit Rider or the Social Insurance Benefit Rider.

To qualify for this increase:

a. You must be under Age 60 on the date You elect the increase; and

b. application must be made within 90 days after Your disability ends on a form We will supply upon request. You must confirm that You are actively and gainfully employed on a full time basis. No other evidence of insurability is required.

The effective date of the increase will be the first of the month after We approve Your application for the increase. The required additional premium must be paid within 31 days of that date. Later premiums for the increase must be paid with the premium for Your Policy.

The premium for the increase will be based on Our current rate table at the time of the increase and will reflect Your attained age at such time. The increase will only apply to new periods of Total or Residual Disability which start after the effective date of the increase.

If you do not apply for and obtain this increase, the Total Disability Monthly Benefit shown on Page 3 will apply to any new periods of Total or Residual Disability.

## GENERAL PROVISIONS

This rider is made part of the Policy to which it is attached.

The Date of Issue of this rider is the same as the Date of Issue of Your Policy unless otherwise shown on Page 3 of the Policy.

The premium for this rider is shown on Page 3 of Your Policy. It is payable on the dates, in the manner, and under the conditions specified in Your Policy.

This rider terminates:

a.  when You reach Age 65; or
b.  when Your Policy terminates, if sooner.

When Coverage is scheduled to terminate on a given date it will terminate at 12:00 midnight on that date.

Unless changed by this rider, all provisions, exclusions and limitations of Your Policy remain the same and apply to this rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*C. Suzanne Womack*

**C. Suzanne Womack, Secretary**

Countersigned by:_____

NC-79 6/87

**LINCOLN NATIONAL**
LIFE INSURANCE COMPANY
Fort Wayne, Indiana

6862813

**APPLICATION FOR DISABILITY INSURANCE**

Part One

| 1. (a) Name    Last | First | Middle Initial | (b) Social Security Number |
|---|---|---|---|
| Paoli | Karen | L. | 555 - 94 - 9271 |

| 2. (a) Birthplace    (State) | (b) Birthdate | | | (c) Age (Last Birthday) | (d) Sex |
|---|---|---|---|---|---|
| Utiah    CA. | Mo. 8 | Day 9 | Year 55 | 33 | ☐ Male ☒ Female |

3. (a) Residence Address 3580 Tolling Ave.  _Street_  Ukiah  _City_  CA.  _State_  95482  _Zip_

(b) Business Address 275 Hospital Dr.  Ukiah, CA. 95482

(c) Name of Employer Ukiah Adventist Hospital _____ (d) Number of Employees ____

4. Send Premium Notices to:   ☐ Business Address   ☐ Residence Address   ☐ Other (Specify in Special Requests)

5. (a) Occupation: Registered Nurse ____ (b) Exact duties: Emergency Room ____
(c) How long: in present occupation? 7 yrs. with present employer? 7 yrs.
(d) Are you actively at work full-time in the above occupation?  Yes ☒  No ☐
(e) For managers/executives/sales persons, percent of time traveling? ____

6. Annual Earned Income (After Business Expense, if any):
(a) Current year $ 33,000 ____ (b) Prior year $ 26,500 ____

7. If UNEARNED INCOME (dividends, interest, etc) exceeded $10,000 for the Prior Calendar Year, please state total unearned income   $ ____

8. Does your net worth exceed $2,500,000?  Yes ☐  No ☒  If "Yes," show current net value:
Cash, Savings, Stocks & Bonds $ 30,000 ____ Personal Property $ 14,000 ____ Business $ ____
Personal Residence $ 50,000 ____ Other Real Estate $ ____ Other $ ____

9. Do you have, or are you applying for other disability coverage: (1) Individual, (2) Association, (3) Employer Sick Pay, (4) Group, (5) Overhead Expense, (6) Buy/Sell or (7) Key Person?  Yes ☐  No ☒   If "Yes," give details below.

| Company or Source | Type (1,2,3,4,5,6,7) | Year of Issue | Monthly DI Amount | Benefit Period Accident | Sickness | Coverage to be replaced within 30 days of issue? | |
|---|---|---|---|---|---|---|---|
| | | | | | | YES | NO |
| | | | | | | YES | NO |
| | | | | | | YES | NO |

10. Does any of the above disability coverage include a Social Security supplement?
Yes ☐  No ☒  Amount ____ Company ____

11. Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒ Do you use tobacco in any other form? Yes ☐ No ☒
Quit 1-1-88

12. (a) Name and address of your regular doctor(s)? Dr. Marvin Rohee. Hospital Dr. 620 S. Dora St.
Ukiah, CA. 95482

(b) Date and reason for last consultation(s) 3/88 - Thyroid problem.

13. In the past ten years have you:
(a) engaged in, or contemplate engaging in, aviation, ballooning, parachuting, hang gliding, vehicle racing, skin or scuba diving, or any similar sport or avocation? (If "Yes," complete appropriate questionnaire.)   Yes ☐  No ☒

(b) (1) received advice, treatment, or been convicted of a crime as a result of the use of alcohol?   Yes ☐  No ☒
(2) used or received advice, treatment, or been convicted for the use or possession of any narcotic, stimulant, sedative, or hallucinogenic drug?   Yes ☐  No ☒

(c) (1) had or been told you had AIDS, AIDS Related Complex, or AIDS related conditions?   Yes ☐  No ☒
(2) received treatment in connection with any of the categories mentioned in (1) above?   Yes ☐  No ☒

14. Do you have any intention of living outside the U.S.A. and Canada in the next two years?   Yes ☐  No ☒
Give details of "Yes" answers to questions 13 & 14. ____

Form 650D-11 8/87

QUESTIONS 15 THRU 18 NEED NOT BE ANSWERED IF A MEDICAL EXAM IS BEING FURNISHED

**15.** Height _5_ ft. _3_ in. Weight _150_ lbs. Have you lost weight in the past year?    Yes ☐   No ☒
If "Yes," give amount and cause below.

**16.** Do you have an impairment or deformity, or receive treatment or take medication of any kind?    Yes ☒   No ☐

**17.** Have you within the past 10 years, been treated for or ever had any known indication of:
(a) High blood pressure, chest pain, diabetes, arthritis, epilepsy, headaches, dizziness, mental or nervous disorder, cancer, tumor, hernia, or disease or disorder of the ears, eyes, throat or speech? (Circle the applicable items)    Yes ☒   No ☐
(b) disease or disorder of the back, back, spine, heart, lungs, or circulatory, digestive, respiratory, urinary or reproductive system? (Circle the applicable items)    Yes ☐   No ☒

**18.** Have you within the past 5 years had medical or surgical advice or treatment for any cause(s) not named above?    Yes ☐   No ☒

Give details of "Yes" answers to questions 15-18. Include diagnosis, dates, physicians and addresses. _____

16. THYROID - SYNTHROID 0.2 mgs. _____

_____

_____

_____

_____

_____

_____

**19. Plan Information:**

| | Pro Add | Protector II | BOE | Buy/Sell | Key Person | Other |
|---|---|---|---|---|---|---|
| Benefit Amount | $ 850 | $ | $ | $ L.S. $ Install. | $ | $ |
| Benefit Period | 2 yr. To Age 65 | 2yr. 5 yr. To Age 65 | 12 18 24 | 12 24 36 48 60 | 6 12 18 | |
| Elim. Period (Days) | 30 60 90 180 365 | 30 60 90 180 365 | 30 60 90 | 12 18 24 36 Mo. | 30 60 90 180 | |
| Premium | Level/Step Rate | Level/Step Rate | | | | |
| **Optional Benefits** | | | | | | |
| Social Ins. Amt. | $1,000 $850 $700 | $ | | | | |
| Elim. Period (Days) | 30 60 90 180 365 | 30 60 90 180 365 | | | | |
| Supp 60 | $ | | | | | |
| Option to Increase | $ | $ | $ | $ | $ | |
| Lifetime | LTA    LTA&S | LTA&S | | | | |
| Own Occ | | | | | | |
| COLA | 5% 8% 10% | 5% | | | | |
| Residual Disability | | | | | | |
| Salary Reimb. | | | $ 3 6 12 Mo. | | | |
| Repl. Rider | | | | | | |
| Adv. Ben. Rider | | | | | | |
| Dual Policy Disc. | | | | | | |
| Required Forms | | | Form 10486 | Form 19424 | | |
| | | | | | | |

**20.** Paid by:  ☐ Individual Insured   ☐ Employer of Insured    SC
Frequency:  ☐ Annually  ☐ Semiannually  ☒ Quarterly  ☒ Monthly (List Bill or ABC only)
Method:  ☐ Direct Bill  ☒ ABC (Monthly)  ☐ List Bill Current Acct. No. _____ (For new account complete Form 2291)

**21.** How much premium is paid with this application? _____

| 22. | Special Requests | Home Office Endorsements |
|---|---|---|
| | | |
| | | |
| | | |

## AGREEMENT

As used in this Agreement:

"You", and "your", mean the Proposed Insured and the Applicant, if other than the Proposed Insured.

"We", "us" and "our" mean the Lincoln National Life Insurance Company, Fort Wayne, Indiana.

It is understood and agreed by you that:

(a) Acceptance of the policy issued on this application will be an acceptance of its terms and ratification of any changes specified or referenced in the section marked "Home Office Endorsements." Any change in age at issue, plan or amount of insurance, premium, classification or added benefits must be agreed to in writing.

(b) To the best of your knowledge and belief all of the statements on this application are true, complete, and correctly stated. These statements and answers are offered to us as the basis for any policy issued on this application.

(c) Unless the insurance becomes effective as specified in the conditional receipt attached to this application we will incur no liability until: (1) any policy applied for has been delivered to and accepted by you; and (2) the first premium is paid. When you accept the policy, your state of health or any other factor affecting insurability must be the same as set forth in the application.

## AUTHORIZATION

By this form I authorize any licensed doctor, medical practitioner, clinic, hospital, or other medical or medically related facility, insurance company, the Medical Information Bureau, or other person, organization, or institution, that has any records or knowledge of me or my health, to give to The Lincoln National Life Insurance Company (LNL), or its reinsurers, any such information and to testify as to such information, all to the extent permitted by law. I understand the information obtained with this form will be used by LNL, or its reinsurers, to determine my eligibility for insurance. A photocopy of this form is valid. I may request a copy. This form will be in force for two years and six months from the date shown below.

I also acknowledge that I received the Investigative Consumer Reports notification and Important Notice attached to this application.

Signed at ___UKIAH___                  ___CA.___            X _____
                City                          State                         Signature of Applicant

Date ____4-13-89____                                        _____
                                                                Signature of Proposed Insured
                                                                (If other than applicant)

I certify that I have truly and accurately recorded on this
application the information supplied by the Proposed
Insured and/or Applicant

_____
         Signature of Agent or Broker

POLICY NUMBER: 15 6062811          INSURED: KAREN L PAOLI

DATE OF ISSUE: MAY 21, 1989

PREMIUM DUE DATES AND AMOUNTS

PREMIUM PAYMENT INTERVAL ELECTED -  QUARTERLY

BEGINNING ON MAY 21, 1989

| TOTAL ANNUAL PREMIUM | TOTAL SEMIANNUAL PREMIUM | TOTAL QUARTERLY PREMIUM | TOTAL MONTHLY PREMIUM |
|---|---|---|---|
| $505.16 | $257.93 | $131.89 | $43.87 |

IF YOU ARE ELIGIBLE TO RENEW THIS POLICY AFTER AGE 65, RATES WILL BE
THOSE IN EFFECT AT THE TIME OF RENEWALS.

PAGE 3

# DISABILITY INCOME
# INSURANCE
# POLICY

Non-Cancellable to Age 65

Not Subject to Modification
or Cancellation While in Force

If you have any questions concerning this Policy or if
anyone suggests that you change or replace this Policy,
please contact your Lincoln National Life agent or the
Home Office of the Company.

## THE LINCOLN NATIONAL
## LIFE INSURANCE COMPANY

### 1300 South Clinton Street
### P.O. Box 1110
### Fort Wayne, Indiana 46801



LINCOLN
NATIONAL
LIFE INSURANCE
COMPANY

NCD 9N-6/87